UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 15-cr-200 (JNE/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Ryan William McMillan, | |
| Defendant. | |

---

Jeffrey S. Paulsen, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for the Government); and

Shannon R. Elkins, Assistant Federal Defender, Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, MN 55415 (for Defendant).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant's Motion to Suppress Evidence Obtained through Illegal Search and Seizure (ECF No. 19). This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Joan N. Ericksen, District Judge of the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Defendant is charged with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). (Compl., ECF No. 1). Defendant filed his Motion to Suppress Evidence Obtained through Illegal Search and Seizure (ECF No. 19), seeking to suppress physical evidence obtained as a result of a March 13, 2015 traffic

stop. The Government opposes the motion. A motions hearing was held on August 26, 2015. (*See* ECF No. 22). Assistant United States Attorney Jeffrey S. Paulsen appeared on behalf of the United States of America (the "Government"). Assistant Federal Defender Shannon R. Elkins appeared on behalf of Defendant Ryan William McMillan.

The Court heard testimony from Minneapolis Police Department Officers Brian Bennett and Michael Meath. The parties offered and the Court received: Government Exhibit 1: police squad car video; Government Exhibit 2: three photographs of the search of Defendant's vehicle; and Defendant's Exhibit 1: aerial map of traffic stop location.

Post-hearing briefing is complete and this motion is ripe for a determination by the Court. Based upon all the files, records, and proceedings herein, along with the testimony and exhibits presented, the undersigned Magistrate Judge recommends that Defendant's motion be denied.

I. **FINDINGS OF FACT**

Officer Brian Bennett is a licensed peace officer with approximately twelve years of law enforcement experience. Officer Michael Meath is a licensed peace officer with approximately thirteen years of law enforcement experience. Officers Bennett and Meath were on duty in different vehicles on March 13, 2015. At about 1:10 a.m., Officer Bennett was near the intersection of Humboldt Avenue North and 49th Street North in north Minneapolis, Minnesota. The area around Humboldt Avenue and 49th Street is considered a high-crime area due to a high prevalence of narcotics, violent crime, guns, and gang activity.

Officer Bennett observed a vehicle come to a complete stop at the intersection of Humboldt Avenue and 49th Street. The vehicle was facing westbound on 49th Street. The vehicle, after having already stopped, then put on its right turn signal and made a right turn, heading northbound on Humboldt Avenue. Officer Bennett initiated a traffic stop because he perceived a violation of Minnesota Statute § 169.19, subd. 5, which requires turn signals to be in continuous operation 100 feet leading up to a turn. Officer Bennett observed that the vehicle did not signal throughout the 100 feet prior to turning. Instead, the vehicle only signaled upon coming to a stop at the intersection. After Officer Bennett initiated a traffic stop, the car complied promptly and pulled over. The vehicle was stopped two blocks north of the traffic violation. (Def.'s Ex. 1).

On cross-examination, Officer Bennett testified that he routinely makes this type of traffic stop. Officer Bennett does not recall the last time he wrote a ticket for failing to signal within 100 feet of a turn. Instead, Officer Bennett uses the stop to advise motorists of the law requiring them to use their signal. Officer Bennett testified that this is a routine violation. The squad video shows Officer Bennett informing Defendant he made an "improper turn." (Gov't Ex. 1, at 01:11:11).

Officer Bennett testified that, after the vehicle pulled over, he approached the driver's side of the vehicle and his partner approached the passenger side. Officer Bennett testified that he saw four individuals in the car, with none of them wearing a seatbelt. Upon approaching the vehicle, Officer Bennett testified that he could smell a strong odor of marijuana coming from the vehicle. Officer Bennett also observed a shiny object in the fold-down armrest of the rear seat between the two rear passengers. Officer Bennett

3

testified that he was concerned about this shiny object because he could not determine what the object was from his point of view. Officer Bennett asked the driver for his identification and then informed the driver he had been pulled over for an improper turn. (Gov't Ex. 1, at 01:10:51).

After being at the side of the vehicle for about seventy-five seconds, Officer Bennett is seen nodding and signaling to his partner. (Gov't Ex. 1, at 01:12:03). Officer Bennett then asked all occupants of the vehicle to keep their hands up. (Gov't Ex. 1, at 01:12:06). Officer Bennett testified that he decided to remove the occupants from the vehicle given the odor of marijuana, the high-crime nature of the neighborhood, and the shiny object. Officer Bennett had the four occupants exit the vehicle one at a time. (Gov't Ex. 1, at 01:12:10, 01:14:20, 01:16:42, 01:18:58). At the point when two occupants had been removed, with Defendant and another remaining in the vehicle, Officer Bennett is heard saying "Alright, step out, keep your hands up" to Defendant. (Gov't Ex. 1, at 01:16:49). Immediately thereafter, in response to an inaudible question from one of the two remaining occupants of the vehicle, Officer Bennett says: "Yeah, you can put your seatbelt [indistinguishable]." (Gov't Ex. 1, at 01:16:51).[1] As each occupant exited the

---

[1] It is not clear whether the statement is "Yeah, you can put your seatbelt *on*" or "Yeah, you can put your seatbelt *off*." To the Court, it sounds like "*on*," but the Court cannot rule out "*off*." One problem with the interpretation of "*on*," however, is that it does not make sense if said to Defendant due to the context where he was about to exit the vehicle, but might make sense if said to the remaining passenger. If the word is "*off*," it makes sense if said toward Defendant because he would have to take his seatbelt off (if he had been wearing one) to exit the vehicle. The video shows Defendant holding his hands up, but lowering his hands upon Officer Bennett's statement. Officer Bennett likely misspoke at the traffic stop when using the word "put" in connection with taking a seatbelt "*off*." Thus, if Officer Bennett was speaking to Defendant, and not the passenger, it would imply that Defendant had his seatbelt on at that moment.
    The Court notes that, on cross-examination, Officer Bennett was confronted with the squad video recording and testified that he could be heard on the video saying "take the seatbelt off." But on redirect,

vehicle, they were pat searched, handcuffed, and placed in squad cars. (Gov't Ex. 1, at 01:12:10, 01:14:20, 01:16:42, 01:18:58).

Officer Meath responded to the scene of the traffic stop as backup. Officer Meath testified that Officer Bennett informed him of a silver object in the back seat of the vehicle. Officer Meath testified that he, too, smelled the odor of marijuana coming from the vehicle. Officers Bennett and Meath testified that, after the occupants were removed, the purpose of the search was to identify the source of the marijuana odor. As Officer Meath performed the search, Officer Bennett and other officers attempted to identify the occupants. Defendant Ryan William McMillan was identified as the vehicle's driver, with one passenger in the front seat, and two remaining occupants in the rear seats. One occupant, Christopher Washington, had a misdemeanor warrant for his arrest. All four occupants were in squad cars during the search of the vehicle.

During the search of the vehicle, Officer Meath found a loaded handgun underneath the driver's seat cushion. Officer Meath testified that he saw a tear in the seat cushion of the driver's seat. Upon looking in the torn seat, Officer Meath located the handgun between the metal frame of the seat and the seat cushion. (Gov't Ex. 2, at 2).

---

Officer Bennett stood by his testimony that none of the passengers was wearing a seatbelt when the vehicle was stopped. In the six minutes between the car being pulled over and Defendant exiting, seatbelts could have been put on or taken off by any of the passengers, including Defendant. As noted in their briefs, however, both parties agree that it is irrelevant for Fourth Amendment purposes whether Defendant was wearing his seatbelt or not. (Def.'s Mem. in Supp. of Mot. to Suppress Evidence, at 2 n.1; Gov't's Mem. in Opp. at 3–4). If anything, this confusion might call into question Officer Bennett's memory as to a detail of the incident. But given the entirety of his testimony and the fact that, on the whole, his testimony comports with the squad car audio and video despite not having reviewed it prior to the hearing, the Court finds Officer Bennett a credible witness.

5

Officer Meath stated that he did not damage the seat to reach the gun and that the handgun was loaded with a chambered round.

Defendant was arrested for possession of a firearm without a permit and for being a felon in possession. Officer Bennett testified that an individual's driver's license would show if they had a valid handgun permit. Officer Bennett's testimony indicates that Defendant's license had no such information, but Officer Bennett did not ask Defendant if he had any other documentation showing he had a valid handgun permit. Nothing in the record shows that Defendant had any such permit on his license or otherwise. Officer Bennett testified that another officer reported that he found marijuana on Mr. Washington. Although no marijuana was found in Defendant's vehicle itself, officers did subsequently find marijuana debris and a ripped plastic bag in the squad car in which Mr. Washington and Defendant were transported. Officer Bennett testified that he does not know what was the shiny object that initially caught his attention, only that it ended up being nothing notable. Officer Meath also testified on cross-examination that nothing shiny was discovered in the back seat and that he does not know what the shiny object might have been.

## II.   CONCLUSIONS OF LAW

Defendant moves to suppress physical evidence obtained as a result of a warrantless search of his vehicle on March 13, 2015. Defendant argues that he was "unlawfully seized when he was taken out of his car, searched, handcuffed and placed in a police squad car." (Def.'s Mem. in Supp. of Mot. to Suppress Evidence, at 1, ECF No. 23). Defendant argues that, at the time officers began searching his vehicle, "the officers

lacked probable cause to believe that [Defendant] had committed a crime or that evidence of a crime would be found in his vehicle." (Def.'s Mem. in Supp. of Mot. to Suppress Evidence, at 1).

### A. Probable Cause for the Traffic Stop and Seizure of Defendant

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (citations omitted). The "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810 (citations omitted). "It is well established that even a minor traffic violation provides probable cause for a traffic stop." *United States v. Williams*, 429 F.3d 767, 771 (8th Cir. 2005).

Officer Bennett testified that he observed Defendant violate Minnesota Statute § 169.19, subd. 5. This statute requires that "signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." MINN. STAT. § 169.19, SUBD. 5. Officer Bennett observed Defendant's vehicle, traveling westbound on 49th Street, come to a complete stop upon reaching Humboldt Avenue. Officer Bennett then observed Defendant signal his intent to make a right turn only after he stopped at the intersection. After signaling, Defendant turned northbound on Humboldt Avenue where shortly thereafter Officer Bennett initiated the traffic stop.

7

Thus, Officer Bennett's credible testimony establishes that Defendant did not give a continuous signal during the last 100 feet traveled prior to turning as required under Minnesota law. Therefore, the Court finds that Officer Bennett had probable cause to believe a traffic violation had occurred. Because Officer Bennett had probable cause, the initiation of the traffic stop was reasonable under the Fourth Amendment.

An "investigative stop can grow out of a traffic stop so long as the officer has reasonable suspicion to expand his investigation, even if his suspicions are unrelated to the traffic offense that served as the basis for the stop." *United States v. Long*, 320 F.3d 795, 800 (8th Cir. 2003) (citing *United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002). The officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity" in light of all the circumstances from which "a trained officer draws inferences and makes deductions . . . that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). Officers conducting such investigative stops "may take steps reasonably necessary to protect their personal safety." *United States v. Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008) (quoting *United States v. Shranklen*, 315 F.3d 959, 961 (8th Cir. 2003)).

Here, Officer Bennett and his partner approached a vehicle with four occupants after effectuating a proper traffic stop at about 1:10 a.m. in a high crime area. After approaching the driver, Officer Bennett could smell a strong odor of marijuana coming from the vehicle. He also testified to observing a shiny object in the fold-down armrest of the rear seat. Officer Meath testified that, upon responding to the scene, Officer Bennett informed him of a silver object in the back seat of the vehicle. The strong marijuana odor,

a shiny object in the fold-down armrest of the rear seat within close reach of the two backseat passengers, and the time and location of the traffic stop in a high-crime area with a prevalence of guns, narcotics, violent crime, and gang activity combined to provide law enforcement with a reasonable, articulable suspicion that Defendant was engaged in criminal activity. This context justified law enforcement's removal of the occupants, handcuffing them, and placing them in squad cars as steps reasonably necessary to protect the officers' personal safety in order to search the vehicle.

### B. Probable Cause to Search

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). "[T]he 'automobile exception' permits the warrantless search of a vehicle if the police 'had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.'" *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)). "Probable cause sufficient to justify a search exists where, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kennedy*, 427 F.3d 1136, 1141 (8th Cir. 2005). "In making the probable-cause determination, [courts] 'apply a common sense approach and consider all relevant circumstances.'" *Vore*, 743 F.3d at 1179 (quoting *Kennedy*, 427 F.3d at 1141).

### 1. Odor of Marijuana Supports Probable Cause to Search

The Eighth Circuit "has held numerous times that the smell of marijuana coming from a vehicle during a proper traffic stop gives an officer probable cause to search for drugs." *United States v. Smith*, 789 F.3d 923, 928 (8th Cir. 2015); *see United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005) (officer's observation of a mist in the vehicle, along with the smell of marijuana and air freshener gave the officer reasonable suspicion to detain defendant); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (deputy had probable cause to search a truck where the deputy smelled odor of burnt marijuana coming from the cab); *United States v. McCoy*, 200 F.3d 582, 584 (8th Cir. 2000) (the odor of burnt marijuana on the suspect and the smell of air freshener in the car gave officer probable cause to search the vehicle); *United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999) (officer's detection of the smell of burnt marijuana gave him probable cause to search the entire vehicle for drugs); *United States v. Gipp*, 147 F.3d 680, 685 (8th Cir. 1998) (finding that a continued stop based on an officer's detection of the odor of burnt marijuana on a person is not unlawful because the odor gives the officer a "particularized and objective basis for suspecting [the person] was or had recently engaged in criminal activity") (internal quotation omitted).

Here, Officer Bennett approached the vehicle after effectuating a proper traffic stop. After approaching the driver, Officer Bennett could smell a strong odor of marijuana coming from the vehicle. Officer Meath also smelled the odor of marijuana prior to conducting his search. Under the circumstances of this case, the smell of marijuana provided law enforcement with probable cause to search the vehicle for drugs.

Defendant argues that, given the vehicle's four occupants, the odor of marijuana alone did not create probable cause to believe that the automobile contained contraband or evidence of criminal activity. In *United States v. Brown*, upon approaching a parked car, two deputies "each smelled the distinct odor of burnt marijuana emanating from [a] vehicle" holding three occupants. 634 F.3d 435, 439 (8th Cir. 2011). The passenger in the back seat "sat up and admitted smoking marijuana." *Id.* at 436. After receiving consent from the driver, the deputies searched the trunk of the vehicle for the backseat passenger's bag. *Id.* The deputies found no marijuana in the bag, but the odor of marijuana still emanated from the vehicle. *Id.* Given the odor, the deputies searched the *entire vehicle*, finding a loaded handgun underneath a bag on the floor in the front passenger seat. *Id.* at 436–37. Given that there was a "reasonable probability marijuana was located inside the vehicle . . . the officers had probable cause to search the entire vehicle for illegal drugs." *Id.* at 438.

In the instant case, unlike in *Brown*, no passenger admitted to law enforcement that he was the source of the marijuana odor. Instead, Officer Bennett and his fellow officers needed to determine the odor's source themselves. The odor of marijuana indicated to law enforcement a fair probability that contraband or evidence of a crime would be found within the vehicle. While law enforcement did not find marijuana within the car itself, it was later discovered in a search of one of the occupants and in the squad car used to transport that occupant and Defendant. The later discovery of marijuana comports with Officers Bennett and Meath's testimony that they smelled an odor of marijuana coming from the vehicle. Their testimony is credible on this important point.

Therefore, the Court finds that the search is valid notwithstanding the fact that the vehicle held multiple occupants.

### 2. Totality of the Circumstances Supports Probable Cause to Search

As concluded above, the smell of marijuana alone in the context of this case provided Officer Bennett with probable cause to search the vehicle for drugs. But, Officer Bennett did not detect the odor of marijuana alone. He also testified to observing a shiny object in the fold-down armrest of the rear seat. Thus, under the totality of the circumstances, the combination of the strong marijuana odor, a shiny object in the fold-down armrest of the rear seat within close reach of the two backseat passengers, and the location of the traffic stop in a high-crime area with a prevalence of guns, narcotics, violent crime, and gang activity, also provided Officer Bennett with sufficient probable cause to believe there was a fair probability that contraband or evidence of a crime would be found within the vehicle.

Based on the foregoing analysis, the Court concludes that law enforcement had probable cause for the initial traffic stop and to remove Defendant from the vehicle, handcuff him, and place him in the back of the squad car while the officers searched the vehicle. Further, law enforcement had probable cause to believe there was a fair probability that contraband or evidence of a crime would be found within the vehicle, justifying the search of the vehicle. Therefore, the Court recommends that Defendant's Motion to Suppress Evidence Obtained through Illegal Search and Seizure (ECF No. 19) be denied.

### III.   RECOMMENDATION

Based upon the foregoing, and all files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence Obtained through Illegal Search and Seizure (ECF No. 19) be **DENIED**.

Date:  October 21, 2015                              *s/ Tony N. Leung*
                                                     Tony N. Leung
                                                     United States Magistrate Judge
                                                     District of Minnesota

                                                     *United States v. McMillan*
                                                     File No. 15-cr-200 (JNE/TNL)

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.